United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Diego Damian Verdejo and others, Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 21-20431-Civ-Scola ) |
| HP Inc. and others, Defendants. | ) ) ) |

### Order Granting Motion to Dismiss

In this action, the Plaintiffs Diego Damian Verdejo, Etertin, S.A. ("Etertin"), and Iveo Latin American Trading LLC ("Iveo") claim that Defendants HP Inc., Gonzalo Giazitzian, Juan Manuel Campos, Carlos Huergo, Javier Alberto Mazzeo, Ernesto Blanco, and Sergio Venier committed violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). At this time, Defendants Giazitzian, Mazzeo, and Venier (the "nonmoving Defendants") have not appeared in this case despite being served in a manner consistent with this Court's order allowing alternate service. (ECF Nos. 23, 30.)

Defendants Campos, Blanco, Huergo,[1] and HP Inc. filed the subject joint motion to dismiss. (Mot., ECF No. 49.) Plaintiffs Verdejo, Etertin, and Iveo filed an opposition to the motion (Resp. in Opp'n, ECF No. 52). The Defendants filed a reply. (ECF No. 53). After consideration of the parties' briefing and the relevant legal authorities, the Court **grants** the motion. (**ECF No. 49**).

Specifically, the Court finds that the RICO claims fail as a matter of law. Thus, the RICO claims against HP Inc. are dismissed. Because the complaint relies on the existence of a RICO conspiracy to establish personal jurisdiction over Campos and Blanco, the Court finds that it lacks personal jurisdiction over those Defendants and dismisses the claims against them. Although the nonmoving Defendants have not appeared in this action, this reasoning extends to claims against them and requires dismissal of those claims. Lastly, the Court declines to exercise supplemental jurisdiction over the FDUTPA claim against HP Inc.

1. **Background**

Verdejo initiated this action on behalf of himself and his two companies

---

[1] After the filing of the motion to dismiss, the Plaintiffs dismissed their claims against Huergo. (ECF No. 61.) Accordingly, the Court will not consider the claims against Huergo in this Order.

Etertin, S.A. ("Etertin") and Iveo Latin American Trading LLC ("Iveo"). (Compl., ECF No. 1 at ¶ 8.) Etertin is a corporation organized under the laws of Argentina with its headquarters in Buenos Aires, Argentina. (*Id.* at ¶¶ 9, 10.) Etertin was engaged in the business of wholesale distribution of office supplies and equipment, including products manufactured by Hewlett-Packard. (*Id.* at ¶ 23.) Iveo is a Florida corporation that was formed on August 29, 2012 and was later dissolved on August 17, 2018. (*Id.* at ¶ 24.)

Hewlett-Packard was a technology company incorporated in Delaware and had its headquarter in Palo Alto, California. (*Id.* at ¶ 25.) Hewlett-Packard was in the business of producing personal computing devices, information technology infrastructure, and imaging and printing products and services. (*Id.*) In November 2015, Hewlett-Packard split into two companies, including Defendant HP Inc., which is similarly incorporated in Delaware and has its headquarters in Palo Alto, California. (*Id.* at ¶ 26.) HP Inc. took over some of Hewlett-Packard's divisions: personal computing devices, imaging and printing products, and service. (*Id.*) HP Inc. maintains an office in Miami-Dade, Florida and conducts business in Florida as HP Computing and Printing Inc. (*Id.* at ¶ 27.)

Nonparty HP Argentina is a subsidiary of Hewlett-Packard and/or HP Inc. (*Id.* at ¶ 1.) Defendants Huergo, Blanco, Campos, Mazzeo, Venier, Giazitzian were all officers of HP Argentina at some point from 2002 through the present day. (*Id.*)

Sometime in 1995, Etertin began distributing Hewlett-Packard products in Argentina. (*Id.* at ¶ 10.) Etertin entered into a distribution agreement with Hewlett-Packard and HP Argentina. (*Id.* at ¶ 35.) The parties continued their business relationships for over a decade. In 2005, Hewlett-Packard began issuing credit notes to its distributors in Argentina, including Etertin. (*Id.* at ¶ 38.) The credit notes served to provide distributors a discount on Hewlett-Packard products. (*Id.*) Without the credit notes, Argentine distributors would be unable to sell Hewlett-Packard products at a profit. (*Id.* at ¶ 40.) Later, when Hewlett-Packard broke off into two companies, HP Inc. continued issuing the credit notes and extending lines of credit to distributors. (*Id.* at ¶ 43.)[2]

To purchase Hewlett-Packard products, Etertin ordered the products on a website managed by Hewlett-Packard (and later HP Inc.) in the United States. (*Id.* at ¶ 42.) The products were shipped to warehouses rented by Etertin in Miami-Dade County. (*Id.*) The products were then shipped to Argentina. The value of the credit notes was applied to the outstanding balances Etertin owed

---

[2] As will be discussed below, there are inconsistent allegations as to which entity issued and/or withheld credit notes.

for the purchase of Hewlett-Packard products. (*Id.* at ¶ 43.) Etertin would determine the amounts owed to HP Inc. by using an online portal maintained by HP Inc., which reflected Etertin's outstanding balances, and any discounts applied through credit notes. (*Id.* at ¶ 16.)

In October 2010, Giazitzian requested that Verdejo meet him in HP Argentina's Buenos Aires office. (*Id.* at ¶ 46.) At that meeting, Huergo and Mazzeo demanded that Verdejo pay them a portion of the credit notes Etertin received. (*Id.*) They threatened that if Verdejo did not pay them, Etertin would lose its ability to sell Hewlett-Packard products. (*Id.*) Verdejo refused to pay Huergo and Mazzeo. (*Id.*)

In January 2011, individuals broke into Etertin's office in Buenos Aires and stole or damaged the majority of Etertin's merchandise. (*Id.* at ¶ 47.) Shortly after the robbery, Giazitzian approached Verdejo—this time he offered that he and "others at HP Argentina would fix the issues caused by the robbery," in exchange for a cut of the credit notes and a thirty-three percent ownership of Etertin. (*Id.* at ¶ 48.) In fear of financial ruin, Verdejo accepted Giazitzian's demands. (*Id.*)

From April 2011 through June 2017, Etertin and Verdejo began making payments to Giazitzian. (*Id.* at ¶ 49.) Giazitzian shared these payments with other HP Argentina executives, including Defendants Venier, Campos, Huergo, Mazzeo, and Blanco. (*Id.* at ¶ 54.) The payments were made from accounts in Venezuela and the United States. Giazitzian traveled to Miami, Florida in 2014, 2015, and 2016 to demand extortionate payments from Etertin and other victims. (*Id.* at ¶¶ 60–65.) On February 20, 2017, at Giazitzian's instruction, Verdejo initiated seven wire transfers from Iveo's Miami bank account to Giazitzian's New York bank account. (*Id.* at ¶¶ 69–72.)

In June 2017, Verdejo met with Campos in Buenos Aires to complain about and provide evidence of Giazitzian's extortion. (*Id.* at ¶ 78.) Following this meeting, Venier communicated to Etertin's General Manager that he had learned of his meeting with Campos and would be cutting off Etertin's line of credit if the balance was not paid. (*Id.* at ¶ 79.) Instead of remedying the problem, Campos caused HP Inc. to withhold credit notes. (*Id.* at ¶ 80.) After Verdejo retained counsel, the credit notes were reinstated; however, the credit notes were not sufficient to save Etertin from financial ruin. (*Id.* at ¶ 102.)

On February 1, 2021, Verdejo, Etertin, and Iveo initiated this action against HP Inc., Giazitzian, Campos, Huergo, Mazzeo, Blanco, and Venier. The complaint alleges that all the Defendants conspired and participated in an unlawful scheme to extort Verdejo and Etertin in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). (*See generally* Compl., ECF No. 1.) In count one, the Plaintiffs allege that all the

Defendants unlawfully participated in a scheme to extort the Plaintiffs. In count two, the Plaintiffs claim that the Defendants conspired to commit racketeering. In count three, the Plaintiffs claim that HP Inc. aided and abetted in furtherance of the RICO scheme. And in count four, the Plaintiffs allege that HP Inc. violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

In their motion to dismiss, Campos, Blanco, and HP Inc. argue that the complaint should be dismissed on five grounds: (1) the Court lacks personal jurisdiction over Campos and Blanco; (2) the Plaintiffs lack standing to bring their claims; (3) the RICO claims are barred by the applicable four-year statute of limitations; (4) the complaint fails to allege the elements of a RICO claim with the necessary specificity; (5) the FDUTPA claim against HP Inc. must fail because none of the company's racketeering actions occurred in the United States.

## 2. Legal Standards

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir.

1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324).

### B. Failure to State a Claim

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

The Court finds that the complaint is due to be dismissed in its entirety. The RICO claims fail as a matter of law. Because the complaint relies on the existence of a RICO conspiracy to establish personal jurisdiction over Campos and Blanco, the Court finds that it lacks personal jurisdiction over those Defendants. This reasoning extends to the similarly situated nonmoving defendants Mazzeo, Venier, and Giazitzian. Because the RICO claims fail, the Court declines to exercise supplemental jurisdiction over the FDUPTA claim against HP Inc.

### A. Personal Jurisdiction over Campos and Blanco

The Defendants argue that the Plaintiffs fail to allege sufficient facts to invoke jurisdiction over Campos and Blanco under Florida's long arm statute, and therefore, this Court lacks personal jurisdiction over Campos and Blanco

pursuant to Fed. R. Civ. P. 12(b)(2). (Mot., ECF No. 49 at 18 n. 6).[3]

When analyzing a dismissal for lack of personal jurisdiction, the Court must first determine whether "the applicable statute potentially confers jurisdiction over the defendant[s]." *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997)). Jurisdiction over a non-resident defendant may be based upon a federal statute or a state long-arm statute. *Lewis v. Mercedes-Benz USA, LLC*, No. 19-CIV-81220-RAR, 2021 WL 1216897, at *9 (S.D. Fla. Mar. 30, 2021) (Ruiz, J.). If a basis exists for exercising jurisdiction, the Court then determines whether the exercise of jurisdiction comports with due process. *Id.* Both types of jurisdiction are at issue here.

The Plaintiffs predicate the Court's jurisdiction as authorized by the RICO statute. 18 U.S.C. § 1965(d). (Compl., ECF No. 1 at ¶ 21.) The Eleventh Circuit recognizes that RICO authorizes nationwide service of process and that a district court may exercise jurisdiction over any RICO defendant as served if the exercise comports with due process under the Fifth Amendment. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940–48 (11th Cir. 1997). RICO does not authorize international service of process and, as such, cannot be the basis for the assertion of personal jurisdiction over a corporation or individual served abroad. *See Don't Look Media LLC v. Fly Victor Ltd.,* 999 F.3d 1284, 1292–93 (11th Cir. 2021) (concluding that RICO's nationwide service of process provision was not triggered because the defendant was served outside of the United States).

The individual Defendants, including Campos and Blanco, are residents of Argentina, and it is not apparent that they were served in *any* district within the United States. Thus, the Plaintiffs must rely on Florida's long-arm statute to establish personal jurisdiction over Campos and Blanco. *See Brink's Mat Ltd. v. Diamond,* 906 F.2d 1519, 1521–23 (11th Cir. 1990) (recognizing that RICO allowed for nationwide service of domestic defendants and that the district court could look to the state's long-arm statute to determine whether it had personal jurisdiction over the foreign defendants).

"Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). Under the long-arm statute, a court may exercise jurisdiction over a non-resident defendant in two ways: (1) a Florida court can exercise specific personal jurisdiction if the claim asserted against the defendant arises from the defendant's contacts with Florida and those contacts fall within one of the enumerated categories set

---

[3] The Court notes that the Defendants do not contest that this Court has personal jurisdiction over HP Inc.

forth in section 48.193(1)(a); or (2) a Florida court can exercise general personal jurisdiction if the defendant engages in "substantial and not isolated activity" in Florida. *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016). Here, the Plaintiffs argue that the Court has specific jurisdiction over Campos and Blanco due to their participation in the RICO conspiracy, which involved some conduct in Florida. (Resp. in Opp'n, ECF No. 52 at 19.)[4]

Before the Court addresses the question of whether specific jurisdiction exists under the long-arm statute for the alleged tortious conduct, it must determine whether the allegations of the complaint state a cause of action. *PVC Windoors, Inc.*, 598 F.3d at 808 ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action."). Accordingly, the Court will review the allegations against HP Inc., over which this Court has jurisdiction, Campos, and Blanco through the lens of Rule 12(b)(6). *Baron v. Acasta Cap.*, No. CV 16-25118, 2017 WL 3084416, at *3 (S.D. Fla. July 19, 2017) (Scola, J.). In doing so, the Court must construe all reasonable inferences in favor of the Plaintiffs. *Id.*

As will be explained in more detail below, the complaint has failed to allege the underlying RICO claims which serve as the basis for jurisdiction over Campos and Blanco (and the nonmoving Defendants). Accordingly, the Court lacks personal jurisdiction over them.

### B. Failure to state RICO claims

To state a claim under RICO, the Plaintiffs must plausibly allege that the Defendants: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [section 1962]." 18 U.S.C. § 1962(d).

The Court finds that the complaint fails to state a RICO violation or RICO conspiracy. The Plaintiffs lack RICO statutory standing to bring their RICO claims. *Catano v. Capuano*, No. 18-20223-CIV, 2019 WL 3890343, at *4 (S.D. Fla. May 28, 2019) (Torres, J.) (recognizing that "civil RICO standing is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction"). Additionally, the Plaintiffs

---

[4] It is worth noting that the complaint does not identify *any* of the enumerated categories under Florida's long-arm statute that gives rise to specific personal jurisdiction over Campos or Blanco. Notwithstanding, the Court interprets this argument as one under Fla. Stat. § 48.193(1)(a)(2), which allows personal jurisdiction for tortious acts committed within this state.

have failed to state a RICO enterprise. Moreover, it is apparent from the face of the complaint that the Plaintiffs' RICO claims are barred by the applicable four-year statute of limitations. *Frantz v. Walled*, 513 F. App'x 815, 821 n. 8 (11th Cir. 2013) ("A Rule 12(b)(6) dismissal on the statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.").

### 1) RICO statutory standing

The Plaintiffs allege RICO violations based on the Defendants' extortionate requests and withholding of credit notes that ultimately caused the demise of Etertin and financial losses to Verdejo and Iveo. The Defendants move to dismiss for lack of standing with respect to the three Plaintiffs.

Under the civil RICO statute, the Plaintiffs only have standing if they sufficiently allege a domestic injury to their business or property. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see* 18 U.S.C. § 1964(c). "The test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Marrero v. Benitez*, No. 1:17-CV-21026-UU, 2017 WL 7796341, at *6 (S.D. Fla. Aug. 3, 2017) (Ungaro, J.) (citing *Bivens Garden Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir. 1998)); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (stating that plaintiffs must show a "direct relation between the injury asserted and the injurious conduct" and that a court asks "whether the alleged conduct was 'aimed primarily' at a third party").

### a) Etertin, S.A.

The Defendants argue that Etertin lacks standing to bring its RICO claims because it has not suffered a domestic injury. (Mot. ECF No. 49 at 8–9.) The Defendants argue that the harm was felt in Argentina and does not constitute a domestic injury.

A foreign plaintiff's residency is not dispositive on whether its injury is domestic or foreign. *Cantano*, 2019 WL 3890343, at *5. "Evidence of foreign nationality or primary place of business alone is insufficient to categorize an injury as foreign under RICO" and courts consider "factors such as where the injury to a property interest took place, and whether Plaintiffs were working, traveling or doing business in the United States at the time . . ." *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *20 (S.D. Fla. Jan. 26, 2018) (Altonaga, J.). Courts in this district also consider whether

a foreign plaintiff maintained tangible property in the United States that was harmed because of the defendant's misconduct. *Cantano*, 2019 WL 3890343, at *4. These considerations weigh against a finding of a domestic injury to Etertin.

Etertin's alleged injuries are premised on the withholding of credit notes that incapacitated it from conducting business in Argentina and made it impossible for Etertin to pay off its debts to HP Inc. (Resp. in Opp'n, ECF No. 52 at 16.) However, it is unclear from the complaint where the injuries took place. *Lan Li*, 2017 WL 3130388, at *10. The complaint is unclear as to whether the credit notes were issued and withheld by HP Inc. in Miami-Dade County or by HP Argentina in Argentina. For example, early in the complaint the Plaintiffs claim that HP Inc. issued and withheld the credit notes in the United States. (Compl., ECF No. 1 at ¶¶ 80.) Then, the complaint later alleges that it was HP Argentina that withheld the credit notes and harmed the Plaintiffs in Argentina. (*Id.* at ¶¶ 17, 85.) The complaint also alleges that Campos (in Argentina) caused HP Inc. to retaliate against Etertin by withholding credit notes. (*Id.* at ¶ 80.) To further complicate matters, the relationship between HP Inc., the individual Defendants, and HP Argentina is unclear. Nor does the complaint allege that Etertin's property in the United States was harmed as a result the Defendants' misconduct.

In opposition, the Plaintiffs argue that Etertin was injured because it overpaid for Hewlett-Packard products in the United States. (Resp. in Opp'n, ECF No. 52 at 16.) However, in the complaint the injury is not characterized as one related to the overpayment of technology products. Rather the injury is framed as: "The loss of credit notes crippled Etertin in two ways: first, Etertin's sales of HP products plummeted because it could not apply credit notes to reduce the product price to remain competitive with Etertin's competitors (which did have credit notes); second, Etertin's lack of sales prevented it from paying HP Inc. for the products bought on credit, leading to ever increasing debt." (Compl., ECF No. 1 at ¶ 101.) For these reasons, the Court finds that the complaint fails to allege a domestic injury to Etertin.

### b) *Iveo LatinAmerican Trading LLC*

The Defendants argue that Iveo lacks standing to bring RICO claims because any injuries it suffered were not directly caused by the racketeering enterprise. (Mot., ECF No. 49 at 8.)

To satisfy RICO's heightened proximate cause standard, a complaint must allege a direct relationship between the alleged predicate act and the plaintiff's alleged injury. *GolTV*, 2018 WL 1393790, at *9 ("RICO only reaches harm that necessarily is caused by the predicate acts.") (citing *Hemi Grp., LLC*

*v. City of New York*, 559 U.S. 1, 9 (2010)). In considering whether a plaintiff has sufficiently pleaded proximate cause, "the central question that it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Marrero*, 2017 WL 7796341, at *13 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). Thus, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* A link that is "too remote," "purely contingent," or "indirect" is insufficient. *Id.*

      The complaint alleges that in 2017, Giazitzian demanded "that the extortionate payments be made in the United States . . . Verdejo used a bank account belonging to Plaintiff [Iveo], a company he controlled, to accede to Giazitzian's extortionate demands for payment in the United States." (Compl., ECF No. 1 at ¶¶ 67, 68.) This is insufficient to establish RICO statutory standing. Indeed, Iveo's injury stems from the "misfortunes visited upon a third party by the defendants' acts." *Bivens*, 140 F.3d at 906. The third party being Etertin. As alleged, the racketeering scheme targeted Etertin and caused Verdejo, as Etertin's owner, to make several extortion payments to the Defendants. That Verdejo used funds from Iveo's bank account to make payments on Etertin's behalf does not constitute a direct injury to Iveo.

      The Plaintiffs argue that Iveo has suffered an injury because the Defendants knew that the funds being paid by Verdejo on Etertin's behalf were likely to be derived from Iveo. (Resp. in Opp'n, ECF No. 52 at 13.) In support of their argument, the Plaintiffs cite to *United States v. Carpenter*, 611 F.2d 113, 114 (5th Cir. 1980). That case is inapposite. In *Carpenter*, the defendant kidnapped a child whose parents worked at a bank and demanded $38,000 for the child's return. *Carpenter*, 611 F.2d at 113. On appeal, the defendant challenged his conviction of violating the Hobbs Act, 18 U.S.C.A. § 1951, because the attempted extortion was directed solely at the parents of the kidnapped victim, not at the bank. *Id.* The court concluded that the defendant had attempted to extort the bank as well as the parents because the defendant knew that both parents were officers at the bank, had authority to use bank monies, a very large amount of money was demanded, and the defendant directed the parents to ensure that the bank did not interfere with the transfer of the ransom monies. *Id.* at 114. Here, the Court is reviewing the separate issue of statutory standing. Additionally, the two cases are factually different. The complaint fails to allege that Giazitzian knew that he was targeting Iveo when he initiated the extortionary demands. Indeed, Iveo's first payment was made *six years* after the first payment. (emphasis added). Unlike *Carpenter*, there are no facts showing that Giazitzian or any other Defendant targeted Iveo.

### *c) Diego Damian Verdejo*

The Defendants argue that Verdejo lacks standing to bring his RICO claims because his injuries are indistinguishable from that of Etertin and Iveo. (Mot., ECF No. 49 at 8.) The Court agrees.

"RICO standing will not arise solely because one is a shareholder or a limited partner in a company that was the target of the alleged RICO violation. Such injury is too indirect or derivative to confer RICO standing." *Maiz v. Virani,* 253 F.3d 641, 654–55 (11th Cir. 2001). The Eleventh Circuit has recognized that "[a] plaintiff's status as a creditor or stockholder, however, does not preclude standing for RICO violations if the plaintiff has alleged an injury proximately caused by the defendants' acts of racketeering that target the plaintiff." *Beck v. Prupis,* 162 F.3d 1090, 1096 n.10 (11th Cir. 1998) *aff'd,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). Thus, whether shareholder plaintiffs have standing to bring RICO claims is a fact-intensive inquiry which requires the shareholders to establish they suffered an injury separate from that of the corporation in which they hold shares. *Maiz,* 253 F.3d at 654–55.

The response in opposition argues that Verdejo has standing because he was individually targeted by the Defendants and was deprived of substantial deposits. (Resp. in Opp'n, ECF No. 52 at 14.) The Court looks to two Eleventh Circuit cases for guidance. In *Harris,* the plaintiff raised a civil RICO claim on the theory that the defendant committed fraudulent conduct that deprived her of "the value of her shares," in a company in which she was a shareholder. *Harris,* 636 F. App'x at 479. The court found that the plaintiff's injuries merely "flowed from her status as a shareholder and the diminution in the value of her shares." *Id.* The court found that the plaintiff's injuries were "indistinguishable" from the injuries to the corporation and that absent the injury to the corporation she "would not have been harmed." *Id.* at 481–82.

On the other hand, in *Beck,* the Eleventh Circuit acknowledged that "[a] plaintiff's status as a creditor or stockholder . . . does not preclude standing for RICO violations if the plaintiff has alleged an injury proximately caused by the defendants' acts of racketeering that target the plaintiff." *Id.* at 1096 n.10. The court in *Beck* determined that the shareholder plaintiff had alleged sufficient facts to show he had standing to bring RICO claims. *Id.* The complaint alleged that he had been fired and induced to make unwise personal investments because of the racketeering enterprise. *Id.* at 1096. The court explained that these individualized injuries were separate and apart from those suffered by the corporation at issue. *Id.* at 1096 n.10. Notably, the court nonetheless affirmed dismissal of the case because Beck had failed to establish the elements of his RICO claims. *Id.*

This case is more analogous to *Harris*. Indeed, the complaint does not distinguish between the companies' injuries and Verdejo's. Any financial loss to Verdejo is based solely on the acts of racketeering against Etertin and payments made from Iveo's bank account. S*ee Marrero v. Benitez*, No. 1:17-CV-21026-UU, 2017 WL 7796341, at *6 (S.D. Fla. Aug. 3, 2017) (Ungaro, J.) ("Plaintiffs are required to establish each Plaintiff's injury . . . Plaintiffs cannot simply refer to themselves as one unit for purposes of establishing injury-in-fact . . ."); *Worldspan Marine Inc. v. Comerica Bank*, No. 18-21924-CIV, 2020 WL 1238732, at *10 (S.D. Fla. Feb. 27, 2020) (Louis, J.), *report and recommendation adopted,* No. 18-21924-CIV, 2020 WL 1238024 (S.D. Fla. Mar. 12, 2020), and *report and recommendation adopted,* No. 18-21924-CIV, 2020 WL 1538688 (S.D. Fla. Mar. 31, 2020) (Moreno, J.) (finding that the plaintiff lacked RICO standing because his injuries were predicated on racketeering acts against the companies it owned).

Moreover, the response's reliance on *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1530 (11th Cir. 1987), belies the argument that Verdejo has standing to bring the subject RICO claims. (Resp. in Opp'n, ECF No. 52 at 15.) In that case, the Eleventh Circuit held that a shareholder plaintiff had alleged injuries that "cannot properly be characterized as deriving solely from his status as a shareholder; particularly that he had been deprived of the use of substantial depositions in the company. *Warner*, 828 F.2d. at 1530. Even so, the Eleventh Circuit held that "Warner's complaint is flawed, however, because of his failure to distinguish between injuries sustained by him personally, and those suffered derivatively." *Id*. Here too, the complaint does not even allege Verdejo personally lost the use of substantial deposits in either Etertin or Iveo. Moreover, like in *Warner*, Verdejo has failed to distinguish his own injuries from that of the companies he owns.

### 2) **Failure to allege a RICO enterprise**

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To plead liability under RICO, a plaintiff must allege the existence of two distinct entities: (1) a "person"; and (2) an enterprise (that engaged in the pattern of criminal activity), that is not the same "person" referred to by a different name." *Cedric Kushner Prods., Ltd. v. King*, 533 U.S. 158, 161 (2001). Each party must be separate and distinct from the enterprise because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the *enterprise's*

*affairs* not just their *own* affairs." *Ray v. Spirit Airlines, Inc.,* 126 F. Supp. 3d 1332, 1340 (S.D. Fla. 2015) (Scola, J.), *aff'd,* 836 F.3d 1340 (11th Cir. 2016). Legally separate entities—such as corporations or persons—do not necessarily constitute a RICO enterprise by virtue of their interrelationships, even if the parties together engage in fraudulent conduct. *Id.* (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.,* 582 F.3d 1227 (11th Cir.2009) ("[M]ere corporate separateness is not necessarily sufficient to establish a distinct RICO person and enterprise.")). In certain circumstances, distinct corporate entities can be viewed as indistinct for the purpose of the RICO statute. *Id.* One such circumstance is where an alleged "enterprise" is comprised only of subsidiaries, agents, or employees of the corporation, acting in concert for routine business affairs. *Id., see also Viridis Corp. v. TCA Global Credit Master Fund, LP,* 155 F. Supp. 3d 1344 (S.D. Fla. 2015) (Ungaro, J.) (finding that because the plaintiffs comingled the roles of employees as both persons and members of an enterprise, the plaintiffs failed to satisfy the distinctiveness requirement that must be established to impose RICO liability upon Press and Silverman in their individual capacities."); *Kelly v. Palmer, Reifler, & Assocs., P.A.,* 681 F.Supp.2d 1356, 1378 (S.D. Fla. 2010) (Moreno, J.) (finding that a law firm acting as an agent for its retail clients was not a separate and independent entity as required by RICO); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.,* 336 F.Supp.2d 1239, 1261 (S.D. Fla. 2004) (Gold, J.) *aff'd,* 470 F.3d 1036 (11th Cir.2006) (finding that plaintiff failed to allege a RICO enterprise where the enterprise was comprised only of the company's employees, counsel, consultants, and agents, who were carrying out routine corporate functions).

Here, the "persons" are Defendants HP Inc., Giazitzian, Campos, Mazzeo, Blanco, and Venier. The Plaintiffs allege that those same persons are the enterprise. "Defendants HP Inc., Gonzalo Giazitzian, Juan Campos, Carlos Huergo, Ernesto Blanco, Javier Alberto Mazzeo, Sergio Venier and others constituted an association in fact enterprise ("the Enterprise") for the common purpose of unlawfully obtaining money from Plaintiffs and other Argentine distributors of HP products with their consent induced by the wrongful use of threats that if Plaintiffs and other distributors did not pay, Plaintiffs or the other distributors would lose HP's business." (Compl., ECF No. 1 at ¶ 108.) The complaint also alleges that each individual Defendant and HP Inc. formed part of the enterprise: "Defendants Campos, Huergo, Blanco, Mazzeo and Venier not only received from Giazitzian the payments they knew to be extorted from Argentine distributors such as Etertin, but they also used their authority and power and agreed with HP Inc. to grant credit notes and other financial incentives to those distributors who would pay them kickbacks and have HP Inc. withhold and withdraw credit notes and other financial incentives to those

distributors who refused to pay the kickbacks." (*Id.* at ¶ 111.)

In their response, the Plaintiffs rely on the legal principle that corporations are legal entities apart from their employees to support the sufficiency of the complaint. (Resp. in Opp'n, ECF No. 52 at 9.) While a corporation can be a RICO enterprise and its officers can be distinct RICO persons, the complaint must still satisfy the distinctiveness requirement. The complaint has failed to do that here.

Additionally, the Plaintiffs argue that the complaint alleges how each Defendant has individually furthered the RICO enterprise, such that the individuals and the enterprise are distinct from each other. (Resp. in Opp'n, ECF No. 52 at 6–7.) The Court disagrees. At top, the complaint has comingled the Hewlett-Packard entities and their respective activities in the RICO enterprise. The complaint refers to the Hewlett-Packard entities as "HP," other times as "HP/HP Inc.," or references solely HP Argentina. Additionally, it appears that the individual Defendants were acting on behalf of the various entities. The complaint is silent as to whether their conduct was within or outside the scope of their employment. At best, it appears that the entities and individual's relationships are akin to an agency relationship, which does not possess the distinctiveness of a RICO enterprise. *Burstein v. First Penn–Pac. Life Ins. Co.,* No. 01–985–CIV, 2002 WL 34186960, at *6 (S.D. Fla. Feb. 12, 2002) (Graham, J.) ("Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members."). Notwithstanding the HP entities' "legal separateness," the Plaintiffs do not show that the parties were "free to act independently of each other and to advance their own separate interests." *Boca Raton Cmty. Hosp.,* 502 F.Supp.2d at 1253.

For these reasons, the complaint has failed to allege a RICO claim under Section 1962(c) and counts one and three must be dismissed. *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (affirming dismissal of aiding and abetting claim because the complaint failed to allege an underlying RICO violation).

### 3) *Failure to state a RICO conspiracy*

In count two, the Plaintiffs bring a RICO conspiracy claim under Section 1962(d), which alleges that the Defendants conspired to commit the substantive RICO offenses discussed above. To state a civil RICO conspiracy claim, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Viridis*, 155 F. Supp. 3d at 1365 (citing *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir.2004) ("To be guilty of conspiracy . . . parties must have agreed to commit an act that is itself illegal—

parties cannot be found guilty of conspiring to commit an act that is not itself against the law.")). If there are no new allegations, then because a plaintiff failed to state a RICO claim, the conspiracy claim must necessarily fail. *Id.* (citing *Rogers,* 241 F. App' x. at 609 ("Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.")). As articulated by the Eleventh Circuit, where the complaint fails to state a substantive RICO claim, a RICO conspiracy allegation "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation." *Id.* (citing *Jackson,* 372 F.3d at 1269); *see also Cisneros*, 972 F.3d at 1220.

That is what the complaint has done here. Count two adopts the allegations of the substantive RICO claim and simply alleges that "Defendants agreed and conspired to violate 18 U.S.C. § 1962(c) by conducting and participating in the affairs of an enterprise through a pattern of racketeering activity." (Compl., ECF No. 1 at ¶¶ 128, 129.)

### 4) *Statute of limitations*

"The statute of limitations for civil RICO actions is four years." *Lehman v. Lucom,* 727 F.3d 1326, 1330 (11th Cir. 2013) "The action begins to run 'when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering.'" *Id.* (citing *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir. 2001)). In addition, "if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." *Id.* (citing *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 190, 117 S.Ct. 1984, 1991, 138 L.Ed.2d 373 (1997)). At the same time, however, a plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that occurred outside the limitations period. *Lehman*, 727 FF.3d at 1331. "By extension, when an injury is a continuation of an initial injury, it is not *new and independent.*" *Id.* (emphasis in original).

The extortionary conduct alleged in the complaint began as early as 2011 when Giazitzian first demanded that Verdejo pay him a fee under threat that failure to do so would result in the withholding of credit notes. The complaint alleges that Etertin and Verdejo began making various payments to Giazitzian in 2011 through 2017. Thus, the extortionary conduct alleged cannot form the basis of the actionable predicate acts.

Similarly, Etertin's claims related to the withholding of credit notes after 2017 are barred by the statute of limitations. The complaint alleges that in June 2017, Etertin stopped making payments to Giazitzian and reported the extortion to Campos. In retaliation, Campos caused HP Inc. to withhold credit

notes which financially harmed Etertin. (Compl., ECF No. 1 at ¶¶ 78–80.) This injury is merely a reaffirmation of the original threats and the expected result of nonpayment of the extortionate demands. *Lehman*, 727 F.3d at 1333 (concluding that the injuries suffered by the plaintiffs were not new and independent injuries but rather continuation of the original injury because they arose from the previous act); *Cont'l 332 Fund, LLC v. Albertelli*, No. 2:17-CV-41-FTM-38MRM, 2019 WL 2009369, at *5 (M.D. Fla. May 7, 2019) (finding that injuries from a RICO conspiracy first accrued when the plaintiff learned that the defendant would hinder the plaintiff's business unless it paid bribes). The Plaintiffs cannot escape the consequences of the statute of limitations simply because they assented to Giazitzian's extortionary demands for six years.

The response in opposition makes little attempt to overcome the Defendants' statute of limitations argument. The Plaintiffs argue that the statute of limitations does not bar their claims because their first domestic injury occurred in 2017, when Giazitzian demanded payments be transferred to his bank account in New York. (Resp. in Opp'n, ECF No. 52 at 4.) This argument is unavailing. The Court already found that the complaint has failed to allege a domestic injury. Moreover, as discussed above, this conduct was merely a continuation of the injury that began in 2011.

### C. Nonmoving Defendants Mazzeo, Venier, and Giazitzian

Mazzeo, Venier, and Giazitzian have not appeared in this matter despite being served in a manner authorized by this Court's order granting alternate service. (ECF Nos. 23, 30.) The Clerk of the Court previously entered a Clerk's Entry of Default against those Defendants. (ECF No. 41.)[5] Thus, the Defendants may move to enter a default judgment against those Defendants.

Prior to entering a default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant, the defendant has been properly served, and the complaint adequately states a claim upon which relief may be granted. *See Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). Additionally, "[a] district court may on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Courboin v. Scott*, 596 F. App'x 729, 735 (11th Cir. 2014).

Here, the nonmoving Defendants (Mazzeo, Venier, and Giazitzian) were

---

[5] The entry was inadvertently vacated by the Clerk of the Court upon the Court's order granting Huergo's motion to vacate Clerk's Entry of Default. (ECF Nos. 41, 46.)

similarly situated to the moving Defendants (HP Inc., Campos, and Blanco) with respect to the alleged RICO violations and underlying RICO enterprise. Indeed, all were officers of HP Argentina at some point in time and purportedly participated in the RICO enterprise. With respect to Mazzeo, Venier, and Campos, the complaint has failed to allege sufficient facts that subject the nonmoving Defendants to this Court's jurisdiction under Florida's long-arm statute because the complaint has failed to allege a RICO claim. The complaint concedes that it is unknown whether Mazzeo or Venier had sufficient minimum contacts with the forum and jurisdiction arises solely under their participating in the RICO enterprise. (Compl., ECF No. 1 at ¶ 20.) Additionally, the complaint alleges that Giazitzian traveled to Miami on three separate occasions in 2014, 2015, and 2016, to demand extortionate payments from Etertin (through Verdejo) and other victims. (*Id.* at ¶¶ 20, 60, 63, 65.) Even so, the Court lacks personal jurisdiction over Giazitzian because the underlying RICO claims fail. *PVC Windoors, Inc.*, 598 F.3d at 808.

Additionally, the Plaintiffs were on notice of the potential jurisdictional issues with respect to the individual Defendants because the issues were raised in the subject motion to dismiss. (Mot., ECF No. 49 at n.6); *see Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (stating that a district court can dismiss an action on its own motion only if it does so fairly, usually by providing notice and an opportunity to respond, but noting an exception to this rule where reversal would be futile). For these reasons, the Court finds that it lacks subject matter jurisdiction over Mazzeo, Venier, and Giazitzian.

### D. FDUTPA

Having dismissed the RICO counts, all that remains to be decided is the state law FDUTPA claim against HP Inc. A district court may decline to exercise supplemental jurisdiction over a claim where it has dismissed all claims over which it has original jurisdiction. *Raney v. Allstate Ins. Co.*, 70 F.3d 1086, 1088 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *see also Ramos v. Ocean Bank*, No. 16-22314-CIV, 2016 WL 10891637, at *3 (S.D. Fla. Dec. 8, 2016) (Altonaga, J.) (dismissing state law counts because the Court had already dismissed the RICO claims for which it had original jurisdiction). Accordingly, the FDUPT claim against HP Inc. is dismissed.

### 4. Conclusion

For the aforementioned reasons, the Court **grants** the motion to dismiss

**(ECF No. 49)** as follows: The RICO claims against HP Inc. are dismissed with prejudice for failure to state a claim. The FDUTPA claim against HP Inc. is dismissed without prejudice. The claims against the individual Defendants are dismissed without prejudice for lack of jurisdiction.

The Clerk of the Court is directed to **close** this case and **deny** all pending motions as moot. The Plaintiffs are directed serve a copy of this Order on the nonmoving Defendants.

**Done and ordered** at Miami, Florida on November 7, 2021.

_____
Robert N. Scola, Jr.
United States District Judge